UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUANA MAMISAY,**<br>        Plaintiff,<br>    v.<br>**EXPERIAN INFORMATION SOLUTIONS INC., ET AL.,**<br>        Defendants. | Case Nos.   4:16-cv-05684-YGR<br>               4:16-cv-05711-YGR<br>               4:16-cv-06334-YGR<br>               4:16-cv-06348-YGR<br><br>**ORDER AS TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AMENDED COMPLAINTS PURSUANT TO RULE 12(B)(6): (1) DENYING MOTION AS TO MAMISAY AND KING; (2) GRANTING MOTION WITHOUT LEAVE TO AMEND AS TO PETRIE; AND (3) DENYING AS MOOT AS TO GATCHALIAN** |
| **KATHERINE KING,**<br>        Plaintiff,<br>    v.<br>**EXPERIAN INFORMATION SOLUTIONS, INC. ET AL.,**<br>        Defendants. | |
| **GLENDA GATCHALIAN,**<br>        Plaintiff,<br>    v.<br>**EQUIFAX, INC., ET AL.,**<br>        Defendants. | |
| **JUSTIN PETRIE,**<br>        Plaintiff,<br>    v.<br>**EXPERIAN INFORMATION SOLUTIONS INC., ET AL.,**<br>        Defendants. | |

This Court's prior Order granted motions to dismiss in each of the above-captioned actions. The Order determined that federal Fair Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25, do not prohibit defendants from reporting historically accurate information about delinquent accounts, such as outstanding balances, after a Chapter 13 bankruptcy plan is confirmed, but before the debt has been discharged. The Court permitted plaintiffs to amend their complaints to allege, if possible, a basis for their FCRA and CCRAA claims. Plaintiffs have filed a consolidated amended complaint (CAC) against defendants[1] alleging claims under the FCRA and CCRAA. (*Mamisay,* Dkt. No. 75; *King,* Dkt. No. 101; and *Petrie,* Dkt. No. 72.)

The CAC alleges six claims: (1) failure to follow reasonable procedures to assure accuracy of credit reports in violation of §1681e(b) against the credit reporting agency defendants, Experian and Equifax (CRAs); (2) failure to reinvestigate in violation of § 1681s-2(b) against CRAs and data furnishers; (3) failure to send dispute information in violation § 1681i(a)(2)(A) against CRAs; (4) failure to review and consider all relevant information in violation of section 1681i(a)(4) against CRAs; (5) failure to delete disputed and inaccurate information in violation of section 1681i(a)(5)(A)) against CRAs; and (6) violation of CCRAA against data furnishers for reporting inaccurate information.

Defendants have again moved to dismiss the complaints. Having considered the consolidated briefing, the pleadings in this matter, and the documents subject to judicial notice in connection with the motion,[2] and for the reasons that follow, the Court **ORDERS** that: the motion to

---

[1] As of the date of this order, based on the dismissals entered and the notices of settlement filed, the remaining defendants in the respective actions are as follows: in the *Mamisay* action, only defendant Experian remains; in the *King* action, defendants Experian, Equifax and TD Bank USA remain; and in the *Petrie* action, only defendant Experian remains. In the *Gatchalian* action, all defendants have been dismissed or have settled. The instant motion to dismiss is therefore **DENIED AS MOOT**.

[2] Defendants filed under seal credit reports obtained as to each of the plaintiffs, and seek judicial notice of those credit reports since they are documents referenced in the CAC. The Court has granted the motion to seal by separate order issued this date. The Court **GRANTS** the request for judicial notice, and refers to the documents as RJN Exhibits A-D.

1  dismiss the claims of Mamisay and King are **DENIED**; the motion to dismiss the claims of Petrie is
2  **GRANTED WITHOUT LEAVE TO AMEND**; and the motion to dismiss Gatchalian is **DENIED AS**
3  **MOOT**.

### I. BACKGROUND

In the CAC, each plaintiff alleges filing for Chapter 13 bankruptcy protection and confirmation of a bankruptcy court plan. Plaintiffs assert that they ordered credit reports which showed "inaccurate, misleading, or incomplete" information for certain accounts included in their confirmed bankruptcy plans. They further allege that they notified the credit reporting agencies (CRAs) of the alleged inaccuracies, but their credit reports continued to show inaccurate account information. Plaintiffs allege inaccuracies as follows:

- Mamisay alleges that she checked her credit report on March 16, 2016, and noted that a Citigroup account was reporting a balance and delinquent payment history. She submitted a dispute letter to Experian stating that she "had filed bankruptcy and [requesting Experian] ensure the bankruptcy was being properly reported and [ ] remove the balance and delinquencies." (CAC ¶ 79.) On August 30, 2016, she again reviewed the information about the Citigroup account on her credit report to find that Experian had removed the balance (listed as a zero balance), but had also removed a notation that a bankruptcy had been filed, instead reporting the account as a "bad debt placed for collection and charged off with multiple derogatory payments listed in the account history." (*Id.* ¶ 82.) Mamisay alleges that this reporting indicated the account was in active collections, and the bankruptcy was not reported properly.

- King alleges she checked her credit report March 17, 2016, and noticed a "TD Bank account" reporting a $0 balance and a past due amount of $1,019. King submitted a dispute letter in which she "stated she wanted the creditor to investigate the proper way in which to report the bankruptcy, remove the past due balance, and not report the account as in collections or charged off." (*Id.* ¶ 89.) On July 28, 2016, King looked at a second credit report and found TD Bank had removed the past due balance, but had also removed the notation that the account was included in her bankruptcy and reported the account as charged off. (*Id.* ¶¶ 90, 93-95.)

- Petrie alleges that he ordered a credit report March 20, 2016, which showed three accounts

3

with inaccurate information: (1) a Berkshire Bank account reporting a balance of $20,158, noting it as a bad debt placed for collection and charged off, and no reference to a bankruptcy filing; (2) Monterey Credit union reporting a balance and past due amount of $974, that it was charged off, not noting the bankruptcy filing or that all payments had been made through the bankruptcy; and (3) an HSBC account with a balance of $7154, a past due balance of $197, a notation of it being a bad debt and placed for collections, and no notation of the bankruptcy. Petrie alleges he "disputed the inaccurate tradelines" and specifically stated that he had "filed bankruptcy and requested the creditor[s] refer to the [Consumer Data Industry Association] guidelines on how to report the bankruptcy." (*Id.* ¶¶ 114, 115.) Petrie alleges that the Berkshire Bank account continued to be listed with a balance in the amount of $27,675.00, a past due amount of $27,675.00, despite the account having been transferred to a different entity, as well as a lack of notation that it was part of the bankruptcy. He further alleges that HSBC continued to report the same amounts as before as being in collections and charged off, despite the account being transferred to another entity, which had filed a proof of claim on the debt in the bankruptcy. Finally, Petrie alleges that Monterey Credit Union continued to report the same amounts due and past due, despite being paid in full through the bankruptcy. (*Id.* ¶¶ 118-133.)

## II. APPLICABLE STANDARD

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

4

motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**III. DISCUSSION**

The FCRA imposes duties on both CRAs and "on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). The FCRA creates a private right of action for willful or negligent noncompliance with either the CRAs' or the furnishers' obligations. *Id.* at 1154.

### A. Failure to Reinvestigate Under FCRA (Second, Third, Fourth, and Fifth Claims)[3]

To state a claim for failure to reinvestigate under section 1681i(a), plaintiffs must allege that: (1) their credit files contained inaccurate or incomplete information; (2) they directly notified the CRA and/or credit furnisher of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the CRA/credit furnisher failed to respond to the dispute; and (5) failure to reinvestigate caused them to suffer actual damages. *See Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *2 (N.D. Cal. Apr. 26, 2017); *Taylor v. First Advantage Background Servs. Corp.*, No. 15-CV-02929-DMR, 2016 WL 4762268, at *5 (N.D. Cal. Sept. 13, 2016). In their motion, defendants argue that plaintiffs have not alleged: (1) an actionable inaccuracy; (2) a dispute letter to the CRAs covering the alleged inaccuracy; and (3) actual or statutory damages.

#### 1. Actual Inaccuracy

To state a claim for failure to reinvestigate, plaintiffs must allege the threshold requirement that they disputed an "item of information" on their credit reports that was actually inaccurate. *See* 15 U.S.C. § 1681i(a)(1)(A); *Lugo v. Experian Info. Sols., Inc.*, No. 16-cv-04646-EJD, 2017 WL 2214641, *4 (N.D. Cal. May 19, 2017). The Ninth Circuit has held that a credit entry can be "'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely

---

[3] In their motion to dismiss, defendants characterize the third, fourth, and fifth claims for relief as "three variations on their claim that the CRA Defendants did not reasonably reinvestigate [p]laintiffs' disputes." (Motion at 6:12-16.) The Court therefore analyzes them all together as reinvestigation claims without regard to variations that might otherwise have been argued.

5

affect credit decisions.'" *Gorman,* 584 F.3d at 1164. "A disputed credit file that lacks a notation of dispute may well be "incomplete or inaccurate" within the meaning of the FCRA." *Id.* at 1164; *see also id.* at 1162 (citing *Saunders v. Brank Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) [continuing to report a disputed debt without any notation of the dispute presents a cognizable claim under section 1681s-2(b)]).

As analyzed in the Court's prior ruling, the reporting of balances due, or past due, does not constitute an "actual inaccuracy" simply because a bankruptcy proceeding is pending. *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1146 (N.D. Cal. 2016) (neither filing of a petition nor confirmation of Chapter 13 plan "'absolve[s]' or erase[s] either the debt or the fact that payments are past due;" legal status of debt changes only when discharged in bankruptcy); *see also Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017) (" as a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy"); *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15CV1675 JLS (DHB), 2016 WL 4508241, at *3 (S.D. Cal. June 6, 2016) (while "otherwise accurate negative credit reporting is not retroactively made inaccurate because a bankruptcy petition later discharged the debt"). However, reporting a debt as delinquent without also noting that the debt is the subject of a pending bankruptcy may be misleading, and therefore actionable as an actual inaccuracy. *See Nissou-Raban*, 2016 WL 4508241 at *5 (failure to report pendency of bankruptcy consistent with industry-standard format while reporting a debt as charged off may "prompt those making credit decisions to draw a more negative inference" and therefore be misleading); *Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *5 (N.D. Cal. Apr. 26, 2017) (finding plaintiff stated a claim for inaccuracy where credit line did not report that debt was subject to pending bankruptcy in accordance with Metro 2 codes, "even if her credit report otherwise noted the fact of her bankruptcy"); *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) ("*Nissou-Raban* stands for the proposition that a furnisher that reports delinquent debts during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending so that creditors know that those delinquent debts may be discharged in the future").

Plaintiffs allege inaccuracies based upon accounts reporting balances as "charged off," bad debt, or in collections without noting that the account was included in their bankruptcy proceedings. Mamisay alleges that Experian and Equifax listed a Citigroup account as being charged off or bad debt without indicating it was included in the bankruptcy. (CAC at ¶¶ 82, 83.)[4] Likewise, King alleges that her credit report listed her TD Bank account as charged-off with no notation regarding a bankruptcy filing as to that account.[5] (*Id.* at ¶¶ 90, 93-95.) Petrie alleges that three trade lines were all noted as bad debts placed for collection and charged off without any notation of his bankruptcy filing. (*Id.* ¶¶ 111, 112, 113.) These allegations are sufficient to state the basis for an actionable inaccuracy.

Defendants contend that omitting the notation that a particular account is included in a bankruptcy does not make a credit report misleading, citing two decisions from this district, neither of which assists them. The court in *In re Experian Info* rejected an argument, raised for the first time at oral argument on the motion to dismiss, indicating that it had been shown no basis in the law for insisting that a bankruptcy notation accompany the account information as a line item. *In re Experian Info. Sols. Credit Reporting Litig.*, No. C 16-05674 WHA, __ F.Supp.3d. __, 2017 WL 1319843, at *1 (N.D. Cal. Mar. 28, 2017). However, the brief decision in *In re Experian Info* gives no indication that credit report at issue included some accounts with a bankruptcy notation and others without, as here. Defendants' citation to *Mestayer* is even farther afield. *Mestayer v. Experian Info. Sols., Inc*, No. 15-CV-03645-EMC, 2016 WL 7188015, at *3 (N.D. Cal. Dec. 12, 2016). There, the creditor there was alleged to have disclosed the bankruptcy along with the

---

[4] Mamisay's tri-merge credit report indicates that a Citibank NA account noted a zero balance charged off as bad debt, but did not note the account was part of a pending bankruptcy. (RJN Exh. A at 13.) By contrast, the report stated that other creditors' accounts and balances were included in her Chapter 13 bankruptcy. (*Id.* at 8, 9, 11.)

[5] King's Experian credit report, submitted with defendants' request for judicial notice, demonstrates that Experian listed her TD Bank account as charged-off with no notation regarding a bankruptcy filing as to that account, despite the credit report listing other accounts with payment status note of "debt included in or discharged through bankruptcy Chapter 13." (RJN Exh. B at 25; 8-12.)

7

pending debt, leading the court to find that simply failing to follow industry standards was not misleading or inaccurate. *Id.*

Plaintiff Petrie also alleges inaccuracies based on reporting debts as owed to the incorrect creditor, and reporting incorrect amounts listed as due or past due when they had been paid in full. Petrie alleges that he disputed these tradelines and requested the creditors refer to the bankruptcy correctly, but the accounts were not updated. (CAC ¶¶ 114, 115, 1116, 118, 119, 122, 124, 128, 129, 130.) These alleged errors in Petrie's credit report likewise state actual inaccuracies.

### 2. *Notification of Inaccuracy*

Defendants next argue that the reinvestigation claims should be dismissed for failure to allege that plaintiffs notified defendants of the asserted inaccuracies. The obligation to reinvestigate arises from the notice of the dispute provided by the consumer. *Gorman*, 584 F.3d at 1157 (holding that CRA's notification to furnisher regarding nature of dispute was too vague to require further investigation). "It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation," as well as the CRA's obligation to conduct a reinvestigation. *Id.* Defendants contend that the allegations regarding plaintiffs dispute letters do not identify the specific inaccuracies they now allege.

Defendants' arguments are unpersuasive as to Mamisay and King's dispute letters. Mamisay alleges that Citigroup reported a balance and delinquent payment history, which she disputed in a letter specifically stating that she wanted her bankruptcy to be reported properly, and the balances and delinquencies removed. (CAC ¶¶ 77-79.) In response, the report was changed, but not in the way she requested—the balance was changed to zero, but the account was shown in active collections with no indication it was part of the bankruptcy. King alleges that she disputed an inaccurate past due balance from TD Bank, stating that she wanted the past due balance removed, the account not reported as in collections or charged off, and the bankruptcy to be reported properly. (*Id.* ¶¶ 87-89.) Instead, the balance was changed to zero, reported as charged off, and the bankruptcy notation was removed entirely. The nature of the inaccuracies did not change from the dispute letter to the allegations, even if the specifics about the inaccuracies did

8

change because of actions taken by defendants after Mamisay and King submitted their dispute letters. To require that they send an additional dispute letter to correct the "corrections" on their reports would be redundant and unnecessary. The CRAs and furnishers were given more than sufficient notice of the dispute in the letters, as alleged.[6]

As to Petrie, the CAC alleges that he noticed that three trade lines were reporting inaccurate or misleading information, including noting as a bad debt placed for collection without the notation of its inclusion in the bankruptcy and failure to report the debt had been paid in full. (*Id.* ¶¶ 110-113.) Petrie alleges that his notification letter "disputed the inaccurate tradelines" and requested that the bankruptcy be reported consistent with the CDIA guidelines. These allegations are not sufficient to allege that the notification stated the nature of Petrie's challenges to the debt. Moreover, Petrie has added allegations that two of the accounts were transferred such that it is inaccurate for Berkshire Bank and HSBC to continue to report being owed money. (*Id.* ¶¶ 118, 119, 122, 123.) The CAC simply cannot be construed as alleging that Petrie's notification letter included the inaccuracies upon which Petrie now bases his claim.

In opposition to the motion, plaintiffs include what is apparently the text of Petrie's dispute letter, which states:

> The following accounts are being disputed because I have filed bankruptcy. Please refer to the CDIA guidelines and update accounts appropriately. If you disagree I demand the accounts be marked disputed.

(Oppo. at 8:19-20.) This text, while mentioning that certain accounts were disputed, does not state the nature of the inaccuracy other than to say "because I have filed bankruptcy." (*Id.*) The letter does not indicate the inaccuracies Petrie asserts in the CAC concerning accounts being reported as charged off or in collection, inaccurate amounts due, or incorrect creditors identified.

---

[6] Defendants' citation to *Doster* on this point is misleading. In *Doster*, the court found dismissal of the claim warranted because "[p]laintiff never alleges that she disputed her credit report *after* her May 24, 2016 [bankruptcy] *discharge*," so that allegations that defendants failed to report the discharge accurately failed for lack of notification. *Doster*, 2017 WL 264401, at *4 (emphasis supplied). Here, the inaccuracies identified in plaintiffs' dispute letters were not that the status of the debt had changed, but that the status at the time was not being reported accurately.

9

Consequently, the motion to dismiss Petrie's claim against Experian is **GRANTED WITHOUT LEAVE TO AMEND.** Having offered the text of the notification letter as part of the opposition brief, it is plain that any amendment would be futile.

### 3. *Failure to Allege Statutory or Actual Damages*

#### a. Statutory Damages

To state a claim for statutory damages under section 1681n(a), plaintiffs must allege facts to establish that defendants willfully failed to comply with a duty under the FCRA. 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

Willful noncompliance can be based on either knowing violation or reckless disregard of the law. *Id.* at 59. Reckless disregard of the law is shown when a defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Thus, where the duty under the statute is not clearly established by authority from the courts of appeals or authoritative guidance, a plaintiff cannot demonstrate an "unjustifiably high risk" of violating the statute necessary to show reckless disregard for the law. *Id.* at 70 (citing *Saucier v. Katz,* 533 U.S. 194, 202 (2001)).

Here, plaintiffs claim that the CRAs failed to investigate reported inaccurate or misleading information. Plaintiffs allege the CRAs have a policy of simply adopting whatever information they are given by data furnishers, rather than conducting a reasonable investigation. (CAC ¶ 185.) The CAC alleges that CRAs direct employees to review, investigate, and respond to a consumer dispute in a cursory manner, in less than five minutes per dispute. (*Id.* ¶ 187.) Plaintiffs allege this conduct is willful and reckless.

Creditors are obligated to conduct a reasonable investigation on a report of inaccurate or misleading information. 15 U.S.C. §§ 1781s-2(b); *Gorman*, 584 F.3d at 1154-57 (joining Fourth and Seventh Circuits to hold that an investigation pursuant to § 1681s-2(b)(1(A) may not be unreasonable). The duty to conduct a reasonable investigation is clearly established, as is the standard for what constitutes an actual inaccuracy within the meaning of the FCRA. *Gorman*, 584 F.3d at 1163 (joining Fourth, Fifth, D.C. Circuits to hold that a credit entry is "incomplete or

10

inaccurate" if it is patently incorrect or is misleading to such an extent it can be expected to adversely affect credit decisions). Regardless of whether any appellate authority or agency guidance specifically stated that the type of inaccuracies alleged here are misleading and subject to reinvestigation, the applicable provisions of the FCRA were not unclear. "Willfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (post-*Safeco*, court could only grant summary judgment if no reasonable jury could find the conduct created a risk of violation of the law substantially greater than mere negligence). The allegations here are sufficient to allege that the CRAs recklessly disregarded a clear statutory duty to conduct a reasonable investigation.

In reply, defendants raise for the first time an additional argument: that the CRAs' use of an automated consumer dispute verification ("ACDV") process to investigate disputes establishes that there can be no willful violation of its duty to conduct a reasonable investigation. On this point, defendants cite *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015). However, the court in *Collins* did not reach the willfulness question presented here, since plaintiff did not raise the argument that reliance only on an ACDV to fulfill a CRA's reinvestigation duty is unreasonable in the face of information provided by the consumer that contradicts the creditor's data.[7] Other courts within this Circuit find that exclusive reliance on an ACDV process will not relieve a CRA from liability for willful failure to comply with its investigation duties. *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083, 1088 (D. Or. 2007) ("it appears to be the majority

---

[7] Upon a petition for rehearing regarding the denial of statutory damages in *Collins*, the Eleventh Circuit stated:
> [Collins] contends three courts of appeals have warned CRAs that it is unreasonable to merely contact the creditor to verify the consumer's debt when there is other information provided by the consumer that calls the creditor's data into question; therefore a jury question is presented. *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 226–27 (3d Cir.1997); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 286–87 (7th Cir.1994); *Stevenson v. TRW Inc.,* 987 F.2d 288, 293–94 (5th Cir.1993). We deny his petition because Collins did not raise the argument contained in his petition for rehearing in his initial brief on appeal.

*Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270, 1271 (11th Cir. 2015) (denying petition for rehearing).

11

view that, where a reporting agency is affirmatively on notice that information received from a creditor may be suspect, it is not reasonable for the agency simply to verify the creditor's position without additional investigation;" such reliance could constitute "reckless disregard of the possibility that it would thereby violate of the law"); *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014) (whether defendants' exclusive reliance on the ACDV process in connection with reinvestigations was reckless disregard of its duty was an issue of fact that must be decided by the jury); *Haykuhi Avetisyan v. Experian Info. Sols., Inc.*, No. CV 14-05276-AB (ASX), 2016 WL 7638189, at *13 (C.D. Cal. June 3, 2016) (relying solely on ACDVs alone is "generally insufficient reinvestigation" and could constitute willful violation where plaintiff "repeatedly challenged the accuracy of many accounts on her credit reports"). Here, CRAs are alleged not only to have utilized the ACDV process, but are alleged to have instructed their employees to accept the data furnisher's information without question. Such knowing conduct would fall within the ambit of section 1681n. *See Saenz*, 621 F.Supp.2d at 1083 (citing with approval *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ["the 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources"]). In short, Defendants' citation to *Collins* and other out-of-circuit authorities in support of this belated argument fails to persuade.[8] Thus, Mamisay and King have alleged sufficiently a basis for statutory damages.

        b. <u>Actual Damages</u>

Under the FCRA, "actual damages" has been interpreted to include recovery for emotional distress and humiliation. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Evidence of a denial of credit is not required to recover under the FCRA. *Id.*

---

[8] The district court's decision in *Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714 (E.D. Pa. 2011) is likewise unpersuasive. There, the district court acknowledged that an investigation beyond the ACDV process generally is not required "absent notice of inaccuracy," and found no evidence of willful violation by the CRA "in reproducing credit information from Verizon *in the first instance*." *Id.* at 725 (emphasis supplied). The court did not squarely address whether the CRA's reliance on an ACDV only, in the face of plaintiff's evidence that the CRA had notice of an actual inaccuracy, would support a finding of willfulness.

Defendants argue that plaintiffs have not alleged an entitlement to actual damages because the allegations of the CAC are ambiguous as to which plaintiff suffered such damages. They contend that the allegations do not identify which defendant caused which plaintiff to suffer emotional distress, or in what manner. They further contend that, because plaintiffs have not alleged any entitlement to relief, plaintiffs also lack standing.

As stated above, the CAC sufficiently alleges violation of section 1681s by Experian (Mamisay and King), Equifax (King), and TD Bank USA (King). The CAC alleges that "Plaintiff" seeks damages "related to emotional distress and frustration over Defendant's refusal to update the accounts described herein and the cost of pulling the credit report at issue for the sole purpose of verifying accuracy AFTER the dispute process was complete." (CAC ¶ 193.) While the plural "plaintiff*s*" was not used, the allegations are clear enough that each plaintiff seeks actual damages from each defendant that refused to update the account information as requested.

The Court therefore finds that plaintiffs Mamisay and King have alleged sufficiently a basis for actual damages.

**B.    Reasonable Procedures to Ensure Accuracy (First Claim)**

Defendants argue this claim should be dismissed because the CAC does not allege the content of Defendants' procedures or the manner in which they affected Plaintiffs' credit reports. To the contrary, and as in their claim for failure to reinvestigate, plaintiffs allege that the CRAs have a policy to "simply parrot whatever information is provided by a data furnisher rather than doing even a cursory investigation" and to provide "little to no training" and an expectation that employees do no more than a cursory investigation, spending no more than five minutes in reviewing and responding to a consumer dispute. (CAC ¶¶ 139, 141, 142, 150.) Plaintiffs claim that employees are trained, if at all, to simply verify whatever information currently reported as

13

accurate. (*Id.* ¶ 148.) The motion to dismiss on these grounds as to plaintiffs Mamisay and King is **DENIED**.[9]

### C. Reporting Inaccurate Information - Violation of CCRAA (Sixth Claim)

Defendants move to dismiss plaintiffs' claim for violation of the CCRAA against credit furnisher defendants for reporting inaccurate information to CRAs on the grounds that it fails for the same reasons as plaintiffs' FCRA claims. For the reasons stated above, the motion to dismiss is **GRANTED** as to Petrie and **DENIED** as to Mamisay and King.

## IV. CONCLUSION

The Court previously ordered plaintiffs to file one Consolidated Amended Complaint, given the considerable overlap in the allegations among the cases, and in order to facilitate a comprehensive resolution of these issues in an expedited manner. In light of the Court's rulings on the motions to dismiss presently before the Court, the cases should now proceed independently.

To avoid confusion, plaintiffs shall file an "Amended Complaint for Damages (Restated)" by no later than **August 11, 2017**, in each respective action, which shall not change the substance of any allegations, but shall delete allegations specific to plaintiffs in the other actions. The Restated Complaints shall be refiled with the following redline deletions: (1) in *Mamisay*, 16-cv-5684, delete ¶¶74-76, 86-134; and (2) in *King*, 16 cv 5711, delete ¶¶ 73, 75-85, and 97-134.

With respect to the motion of defendants to dismiss the CAC, the Court **ORDERS** that:

(1) The motion to dismiss Mamisay's claims against Experian is **DENIED**. Defendants shall file an answer to the Restated Complaint no later than **August 21, 2017**. The Court **SETS** a case management conference for **September 11, 2017, at 2:00 p.m.**

(2) The motion to dismiss King's claims against Experian, Equifax and TD Bank USA is **DENIED**. Defendants shall file an answer to the Restated Complaint no later than **August 21, 2017**. The Court **SETS** a case management conference for **September 11, 2017, at 2:00 p.m.**

---

[9] Because Petrie failed to allege that he notified defendants of the inaccuracies of which he now complains, it follows that he has no viable basis for a claim for failure to ensure the accuracy of his credit report. Thus, defendants' motion to dismiss Petrie's claim under section 1681e(b) is **GRANTED**.

14

(3) The motion to dismiss Petrie's claims against Experian is **GRANTED WITHOUT LEAVE TO AMEND**, and Petrie's claim against Experian is therefore **DISMISSED**.  Defendants shall provide the Court with a proposed form of judgment, approved as to form by plaintiff, no later than **August 14, 2017**.

(4) The motion to dismiss Gatchalian's claims is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

This terminates *Mamisay*, 16-cv-5684, Dkt. No.78; *King*, 16-cv-5711, Dkt. No. 106; *Gatchalian*, 16-cv-6334, Dkt. No. 51, and *Petrie*, 16-cv-6348, Dkt. No. 74.

Dated: August 7, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**